IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAVID PITLOR, | |
| Plaintiff, | 8:20-CV-267 |
| vs. | MEMORANDUM AND ORDER |
| TD AMERITRADE, INC., et al., | |
| Defendants. | |

The plaintiff, David Pitlor, is suing TD Ameritrade and Kutak Rock LLP for the second time, and Charles Schwab & Co. for the third time, alleging once again that each of them is engaged in a complex criminal enterprise. *See Pitlor v. TD Ameritrade*, No. 8:17-CV-359, 2018 WL 3997118 (D. Neb. Apr. 19, 2018), *aff'd sub nom. Pitlor v. T.D. Ameritrade*, 749 F. App'x 479 (8th Cir. 2019); *Pitlor v. Charles Schwab & Co.*, Nos. 8:18-CV-196 & 8:19-CV-95, 2020 WL 5593906 (D. Neb. Sept. 18, 2020). Pitlor's theories and pleadings, however, remain unintelligible, and his claims have been disposed of before. The Court will, accordingly, grant the defendants' motions to dismiss his complaint.

I. STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007). For the purposes of a motion to dismiss the Court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The Court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Twombly*, 550 U.S. at 545.

But the facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *Id.* at 545. A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal,* 556 U.S. at 678. Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

## II. DISCUSSION

Pitlor's allegations are, loosely described, premised on what might charitably be described as a "careful" reading of data he extracted from sources such as account statements and transaction records, website and mobile app screen captures, and even logs from the defendants' mobile apps. *See* filing 8. From the clues he "discovered" there, he claims to have unwound a conspiracy to defraud him and launder money for purposes unknown. *See* filing 8.

On that premise, Pitlor asserts three claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, two constitutional civil rights claims, and a claim under the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq. See* filing 8 at 8-10. Specifically, he accuses TD Ameritrade and Kutak Rock of violating RICO, TD Ameritrade and Charles Schwab of violating RICO twice, Charles Schwab of violating his civil rights under color of state law, TD Ameritrade and Charles Schwab of conspiring to violate his Equal Protection rights, and TD Ameritrade and Charles Schwab of acting in restraint of trade. *See* filing 8 at 8-10.

1. SHORT AND PLAIN STATEMENT OF THE CLAIM

To begin with, the defendants argue that Pitlor's complaint should be dismissed pursuant to Fed. R. Civ. P. 8(a)(2), which requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* filing 14 at 17-18; filing 19 at 12-13. The Court agrees. The purpose of Rule 8(a) is to give the defendant fair notice of what the claim is and the grounds on upon which it rests. *Twombly*, 550 U.S. at 555. Pitlor's complaint does neither, and he should know that, because the Court has previously told him that "fair notice may be denied, not just by failing to set forth enough facts, but by burying a defendant in an avalanche of disjointed allegations." *TD Ameritrade*, 2018 WL 3997118, at *4

Rule 8 is both a floor and a ceiling: it can be violated by a complaint that pleads too little and by a complaint that pleads too much. *Anderson v. Nebraska*, No. 4:17-CV-3073, 2019 WL 3557088, at *8 (D. Neb. Aug. 5, 2019) (citing *Residential Funding Co., LLC v. Acad. Mortg. Corp.*, 59 F. Supp. 3d 935, 947 (D. Minn. 2014)), *aff'd*, No. 20-2751 (8th Cir. Mar. 3, 2021). So, it's the plaintiff's burden to plead his claims concisely and clearly so that a defendant can readily respond to them and a court can readily resolve them. *TD*

*Ameritrade*, 2018 WL 3997118, at *4 (citing *Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011)).

Pitlor hasn't met that burden here: his pleadings, including the attachments, contain 572 pages of factual allegations, evidence, argument, legal conclusions, and overheated rhetoric, with little attempt to distinguish among those categories. There's no clear explanation of how he purports to get from his mathematical analysis to multiple conspiracies, and nothing resembling a set of coherent factual allegations that any defendant could be expected to admit or deny. *See* Rule 8(b)(2). This is simply not a pleading susceptible to a reasoned or informed answer, and the Court won't require one.

## 2. RES JUDICATA

TD Ameritrade and Kutak Rock also argue, correctly, that Pitlor's claims against them are precluded by the Court's previous judgment. The claim preclusion principle of res judicata prevents the relitigation of a claim on grounds that were raised or could have been raised in the prior suit. *Banks v. Int'l Union Elec., Elec., Tech., Salaried & Mach. Workers*, 390 F.3d 1049, 1052 (8th Cir. 2004); *see Brownback v. King*, 141 S. Ct. 740, 747 n.3 (2021). A three-part inquiry is undertaken to determine whether res judicata applies: (1) whether the prior judgment was rendered by a court of competent jurisdiction; (2) whether the prior judgment was a final judgment on the merits; and (3) whether the same cause of action and the same parties or their privies were involved in both cases. *Banks*, 390 F.3d at 1052. The first two requirements are clearly met. *See Brownback*, 141 S. Ct. at 748 (ruling under Rule 12(b)(6) that plaintiff has no cause of action is ruling on the merits).

With regard to the third requirement of res judicata, the Restatement (Second) of Judgments provides that when a judgment extinguishes the plaintiff's claim, the claim extinguished includes all rights of the plaintiff to

remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. *Banks*, 390 F.3d at 1052. What factual grouping constitutes a "transaction," and what groupings constitute a "series," are determined pragmatically, giving weight to factors such as whether the facts are related in time, space, origin, or motivation; whether they form a convenient trial unit; and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage. *Id*. In short, a claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim. *Id*.; *see Brownback*, 141 S. Ct. at 747 n.3; *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594–95 (2020); *see also United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1730 (2011).

Pitlor argues that his current claims arise from a different nucleus of operative facts from his 2017 lawsuit. *See* filing 24 at 6. But that argument doesn't survive even a cursory examination of his operative pleading, which relies extensively on events that occurred before then and were alleged in his 2017 lawsuit. It is true, as Pitlor points out, that he's alleged new evidence in support of his claims, of events after his previous lawsuit was *filed*—but that's not the same as evidence arising after his previous lawsuit was *dismissed*, and to the extent that the Court can make sense of his pleading, it seems as if most if not all of the new allegations on which he's relying arose after the April 2018 dismissal of his first lawsuit. *E.g.* filing 8 at 100. So, he *could* have presented them to the Court the first time around, but didn't.

And more broadly, the gist of his complaint isn't that he discovered a new conspiracy different from the one he claims to have discovered in 2017. Rather, his argument is that the conspiracy he discovered in 2017 was bigger than he thought. He's added Charles Schwab to the conspiracy, and he's presenting

what he says is additional evidence, but it's fundamentally the same scheme—that is, fundamentally grounded in the same "nucleus of operative facts"—and the extent to which his present claims still depend on the same events he alleged in 2017 demonstrates that conclusively. *See Magee v. Hamline Univ.*, 775 F.3d 1057, 1059 (8th Cir. 2015); *see also Midwest Disability Initiative v. JANS Enters., Inc.*, 929 F.3d 603, 610 (8th Cir. 2019).

### 3. ARBITRATION CLAUSE

For its part, Charles Schwab contends that Pitlor's claims against it are, like his previous claims, subject to binding arbitration. Filing 19 at 6-10. Again, the Court agrees. To begin with, Pitlor's present claims against Charles Schwab arise out of the same nucleus of operative facts as his previous claims, the primary difference simply being that all the malfeasance he claimed in 2018 and 2019, he now claims was actually part of a RICO enterprise. *Compare Charles Schwab & Co.,* 2020 WL 5593906, at *1, *with* filing 8. And res judicata precludes Pitlor from relitigating the arbitrability of the dispute. *See City of Bismarck v. Toltz, King, Duvall, Anderson & Assocs., Inc.*, 767 F.2d 429, 430-31 (8th Cir. 1985).

Pitlor argues that while he agreed to arbitrate disputes arising from his relationship with Charles Schwab, his current claims are actually based in disputes arising from Charles Schwab's relationship with TD Ameritrade. Filing 24 at 44. But Pitlor's only suing Charles Schwab based on that relationship because of his relationship with Charles Schwab, and his claims all rest substantially on that relationship and transactions in that account, in addition to activity in his TD Ameritrade account. Pitlor can't escape arbitration just by adding a defendant and claiming a conspiracy. *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 175 (2d Cir. 2004); *see also PRM*

*Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 836-37 (8th Cir. 2010); *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 396 (8th Cir. 1994).[1]

Pitlor's claims against Charles Schwab, yet again, belong in arbitration. Charles Schwab asks the Court to dismiss the claims as a result. Filing 26 at 9. The Court has considered whether the entire controversy between the parties can be resolved by arbitration, and whether Pitlor might be prejudiced by dismissal rather than a stay of these proceedings. *See Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 770 (8th Cir. 2011). Under the unique circumstances of this case, however, those considerations aren't precisely implicated—there is no reason to believe an arbitration is likely to occur. Indeed, Pitlor has previously been ordered to arbitrate, and those cases were dismissed because of Pitlor's failure to prosecute them. *See Charles Schwab & Co.*, 2020 WL 5593906, at *3. Given Pitlor's recalcitrance, the Court sees no benefit to the same pointless exercise, and will dismiss these claims with direction that Pitlor, should he wish to pursue them, do so through arbitration.

### 4. FAILURE TO STATE A CLAIM

The defendants also argue, in the alternative, that Pitlor's complaint should be dismissed for failure to state a claim. *See* filing 13; filing 18. For the sake of completeness, the Court agrees.

---

[1] That includes Pitlor's so-called civil rights claims. As will be explained below, those claims are wholly frivolous. But even if colorable, they would be subject to arbitration: Pitlor says he was discriminated against with the conduct alleged in his other claims, and was denied rights under federal law through the defendants' administration of his accounts. Filing 8 at 69-85. Recasting arbitrable claims with spurious civil rights theories won't evade arbitration either. In the context of employment, civil rights claims can be subjected to arbitration, *McNamara v. Yellow Transp., Inc.*, 570 F.3d 950, 957 (8th Cir. 2009), and the Court sees no reason to treat financial services differently.

(a) RICO claims

Much of the Court's reasoning was explained in its 2018 decision. *See TD Ameritrade*, 2018 WL 3997118, at \*5-8. Specifically, to begin with, Pitlor's RICO claims continue to be predicated on fraud allegations that haven't been pled with the requisite particularity. *Id*., at \*5-6. To plead fraud, Pitlor ought to be able to at least clearly allege something as simple as what funds he deposited, what he purchased and sold, and what happened to his assets and funds as a result of the alleged fraud. But while the Court can make out that Pitlor apparently deposited $28,000 with Charles Schwab, and borrowed additional funds on margin, the rest gets lost.

Part of the problem is that Pitlor seems to interpret fleeting instances of the transaction logs as value which, because it was there for a moment, became his. But he hasn't shown how he was prejudiced by any errors. And there is a logical fallacy central to his claims: the "discrepancies" he claims to have found only exist with reference to the same documentation, so he's attempting to prove fraud by relying on documents that, at the same time, he's arguing are unreliable. There are no external sources, as simple as a bank record, to establish a reliable frame of reference. Instead, Pitlor's argument depends on epistemic closure. But to show something was stolen, he needs to connect the transaction summaries he's describing to *actual assets* that he provably owned.

The Court can't find that in the complaint, and not for lack of trying. It's impossible to parse because Pitlor's theories explained by completely eliding distinctions between funds on deposit, margin equity, buying power, profits and losses, wash sale losses,[2] etc.—and because buying on margin includes

---

[2] Wash sale losses are different for *tax* purposes, but that's all. A $50 loss on a sale is just a $50 loss, whether or not it's designated a wash sale. *See* 26 U.S.C. § 1091. It's not clear—very little is—but it seems like perhaps Pitlor believes otherwise. *See* filing 8 at 39-40.

borrowing, eliding those distinctions means eliding the difference between money Pitlor owned and credit he didn't. The "key values" upon which Pitlor depends, *see* filing 8 at 100, are as best the Court can tell just numbers that appear in more than one place, suggesting to Pitlor that they must be related even if it's not evident how.

And as the Court previously explained, even the non-fraud predicates for Pitlor's RICO allegations are insufficient: he has alleged only one purported scheme, concerning one alleged victim, which doesn't establish a pattern of racketeering activity. *TD Ameritrade*, 2018 WL 3997118, at \*6. And more fundamentally, Pitlor's allegations of predicate criminal activity are simply not plausible. *Id.* at \*7. His theory, apparently, is that the defendants were engaged in extremely subtle and elaborate financial sleight of hand to cover up evidence of wrongdoing on *their own account statements*—statements that were allegedly falsified (when they contradict Pitlor's theory) and yet also scrupulously accurate (when they support Pitlor's theory). Even if there were mistakes—and that's far from obvious—there's nothing to bootstrap them into federal crimes, as opposed to state-law torts at most.

(b) Civil Rights Claims

Pitlor's civil rights claims are also insufficient, as the Court previously explained. A claim under 42 U.S.C. § 1983 requires the defendants to act under color of state law, which they didn't. *See TD Ameritrade*, 2018 WL 3997118, at \*7. And a claim under 42 U.S.C. § 1985(3) requires class-based invidious discrimination, which he hasn't alleged facts to support. *See TD Ameritrade*, 2018 WL 3997118, at \*7-8. It's questionable whether the "class-of-one" theory Pitlor relies on is even cognizable under § 1985(3). *See, e.g.*, *Overcash v. Shelnutt*, 753 F. App'x 741, 746 (11th Cir. 2018); *Royal Oak Ent., LLC v. City of Royal Oak, Michigan*, 205 F. App'x 389, 399 (6th Cir. 2006); *Abreu v. Farley*,

- 9 -

No. 6:11-CV-06251, 2019 WL 1230778, at *28 (W.D.N.Y. Mar. 15, 2019); *Higgins v. Saavedra*, No. 17-CV-234, 2017 WL 3052774, at *6 (D.N.M. June 15, 2017); *Kolstad v. Cty. of Amador*, No. 2:13-CV-1279, 2013 WL 6065315, at *9 (E.D. Cal. Nov. 14, 2013); *Potter v. City of Tontitown*, No. 06-5194, 2007 WL 9728823, at *8 (W.D. Ark. Aug. 13, 2007), *aff'd sub nom. Potter v. Tontitown, City of*, 307 F. App'x 18 (8th Cir. 2009); *McCleester v. Dep't of Lab. & Indus.*, No. 3:06-CV-120, 2007 WL 2071616, at *15 (W.D. Pa. July 16, 2007); *Brewer v. Comm'r, Internal Revenue*, 435 F. Supp. 2d 1174, 1179 (S.D. Ala. 2006). But even if it was, it would require Pitlor to identify a favored class and "provide a specific and detailed account" of their preferred treatment, which he hasn't. *See Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015); *see also Barstad v. Murray Cty.*, 420 F.3d 880, 884 (8th Cir. 2005).

(c) Antitrust Claim

Finally, Pitlor's antitrust claim is also insufficient.[3] Under the Sherman Antitrust Act, it is unlawful to contract or form a conspiracy "in restraint of trade or commerce among the several States," 15 U.S.C. § 1, or to "monopolize or attempt to monopolize any part of the trade or commerce among the several States," 15 U.S.C. § 2; *see Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591, 596 (8th Cir. 2009). Pitlor claims to assert both a horizontal restraint of trade and an anti-competitive tying arrangement as *per se* violations of the Sherman Act. Filing 8 at 102-105.

But a horizontal restraint of trade is an agreement among competitors on the way in which they will compete with one another. *Nat'l Collegiate*

---

[3] TD Ameritrade and Charles Schwab have merged. *See* Henry Cordes, *TD Ameritrade-Schwab merger becomes final on Tuesday*, Omaha World-Herald, Oct. 1, 2020, https://bit.ly/3r1GUdb. Briefing in this case was complete before the merger was.

- 10 -

*Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 104 S. Ct. 2948, 2959 (1984). In the absence of plausible allegations of an agreement, this claim fails. *See Reg'l Multiple Listing Serv. of Minnesota, Inc. v. Am. Home Realty Network, Inc.*, 960 F. Supp. 2d 958, 980 (D. Minn. 2013). Nor is there anything to suggest that the goal of any agreement was to restrain competition. *See ES Dev., Inc. v. RWM Enterprises, Inc.*, 939 F.2d 547, 556 (8th Cir. 1991). In fact, while Pitlor contends that the agreement "specifically intended to harm Pitlor's ability to freely and fairly participate," filing 8 at 102, the question "Participate in what?" is unanswered.

And an invalid "tying" arrangement is the sale of an item on the condition that the buyer purchase a second item—the "tied product"—from the same source. *Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.*, 772 F.2d 467, 473 (8th Cir. 1985). Pitlor's claim seems to be premised on a claim that Charles Schwab provided services but *secretly* processed those services in conjunction with TD Ameritrade. Filing 8 at 104. But because he wasn't *forced* to separately purchase any services from TD Ameritrade, there wasn't anything to tie together, much less "two distinct products." *See Marts v. Xerox, Inc.*, 77 F.3d 1109, 1112 (8th Cir. 1996).

Generally speaking, Pitlor's failure to present credible allegations establishing concerted action among the defendants, and his failure to coherently explain his damages, is fatal to all his claims, and they are subject to dismissal under Rule 12(b)(6).

### 5. SANCTIONS

Finally, the defendants ask for sanctions: an award of attorney's fees and expenses, and an injunction against further filings. Filing 27; filing 30. The Court will grant those motions in part and deny them in part.

First, the defendants seek monetary sanctions under Fed. R. Civ. P. 11(c), because Pitlor's complaint is frivolous. Filing 28 at 6; filing 31 at 6. The primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct. *Kirk Capital Corp. v. Bailey*, 16 F.3d 1485, 1490 (8th Cir. 1994); *see Cooter v. Gell & Hartmarx Corp.*, 496 U.S. 384, 392-93 (1990). Sanctions may be warranted when a pleading contains allegations or factual contentions that lack evidentiary support. *See* Rule 11(b); *Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1008 (8th Cir. 2006). And in determining whether a pleading was frivolous, the Court must apply a standard of objective reasonableness. *Pulaski Cty. Republican Comm. v. Pulaski Cty. Bd. of Election Comm'rs*, 956 F.2d 172, 173 (8th Cir. 1992).

*Pro se* complaints are to be read liberally, but they still may be frivolous if filed in the face of previous dismissal involving the exact same parties under the same legal theories. *Kurkowski v. Volcker*, 819 F.2d 201, 204 (8th Cir. 1987). Even if the plaintiff is acting in subjective good faith, that does not objectively excuse his actions. *Id*. And sanctions have been repeatedly approved when plaintiffs attempt to evade the clear preclusive effect of earlier judgments. *Meyer v. U.S. Bank Nat. Ass'n*, 792 F.3d 923, 927 (8th Cir. 2015).

The Court agrees with the defendants that Pitlor's complaint is frivolous, and recognizes its authority to impose a financial sanction pursuant to Rule 11(c). The Court declines to do so. Pitlor's filings make plain that he's laboring under burdens that, thankfully, most people can't imagine. It would be inhumane for the Court to add to his troubles by fining him.

Injunctive relief, on the other hand, is appropriate. There is no right of access to the courts to prosecute a frivolous action, and defendants have a right to be free from harassing, abusive, and meritless litigation. *In re Tyler*, 839 F.2d 1290, 1293 (8th Cir. 1988); *see Whitaker v. Superior Ct. of California, San*

*Francisco Cty.*, 115 S. Ct. 1446, 1447 (1995); *Akins v. Nebraska Ct. of Appeals*, 607 F. App'x 606, 607 (8th Cir. 2015); *Stilley v. James,* 48 F. App'x 595, 597 (8th Cir. 2002); *Wickenkamp v. Smith,* 475 F. Supp. 3d 979, 986 (D. Neb. 2014). Not to mention that Pitlor himself apparently needs help to stop wasting money on filing fees for frivolous lawsuits. *See Stilley,* 48 F. App'x at 597. And enough of this Court's attention has been spent dealing with him.

Accordingly, Pitlor will be enjoined from filing any further lawsuits[4] in this Court or Nebraska state courts against TD Ameritrade, Kutak Rock, or Charles Schwab, or any corporate parent, corporate subsidiary, or employee of the same, unless the pleadings are either signed by a duly-admitted member of the court's bar or the court has authorized the filing of the pleadings in advance. Any failure to abide by the terms of this order may result in further sanctions, or Pitlor being held in contempt of this Court. But nothing in this order should be construed as precluding Pitlor from pursuing arbitration of his claims against Charles Schwab, as Charles Schwab has requested and the Court has previously ordered.

IT IS ORDERED:

1. The defendants' motions to dismiss (filing 13 and filing 18) are granted.

---

[4] The Court has considered whether this injunction should be limited to lawsuits related to his business relationships with TD Ameritrade or Charles Schwab, or to claims he hasn't previously raised. *See Dixon v. Deutsche Bank Nat. Tr. Co.*, 360 F. App'x 703, 704 (8th Cir. 2010); *see also Wickenkamp,* 475 F. Supp. 3d at 986. But the Court isn't persuaded that Pitlor would be able to recognize or respect such a limit.

2. The defendants' motions for sanctions (filing 27 and filing 30) are granted in part and in part denied.

3. The plaintiff's complaint is dismissed.

4. The plaintiff is enjoined from filing any further lawsuits in this Court or Nebraska state courts against TD Ameritrade, Kutak Rock, or Charles Schwab, or any corporate parent, corporate subsidiary, or employee of the same, unless the pleadings are either signed by a duly-admitted member of the court's bar or the court has authorized the filing of the pleadings in advance.

5. A separate judgment will be entered.

Dated this 18th day of March, 2021.

BY THE COURT:

_John M. Gerrard_
John M. Gerrard
Chief United States District Judge